UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4 19 CR |
| v. ) | |
| ) | |
| TARA D. SABATINI, ) | |
| ) | |
| Defendant. ) | |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Ms. Tara Sabatini, represented by Martin Minnigerode, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri.   This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri.   The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count One of the charges, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's scheme to defraud her former employer (hereafter referred to as "Company #1"), occurring during March 6, 2017 through November 9, 2018, of which the Government is aware at this time.   The parties further agree that the defendant may request a sentence below the U.S. Sentencing Guidelines

range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court, pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a), including but not limited to a request for a probation sentence by the defendant. The parties further agree that notice of any such request will be given to opposing counsel and the Court no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request. The Parties reserve the right to oppose any such request on any legal or factual basis. The Government agrees to dismiss counts two and three of the indictment at sentencing.

### 3. ELEMENTS:

Regarding Count One, the defendant admits to knowingly and willfully violating Title 18, United States Code, Section 1343, admits that there is a factual basis for the plea, admits that all facts discussed in this plea agreement are true, and further fully understands that the elements are:

First, the defendant voluntarily and intentionally devised a scheme to defraud Company #1 and obtain money or property by materially false or fraudulent pretenses, representations or promises,

Second, defendant acted with the intent to defraud,

Third, when advancing, furthering, or carrying out the scheme, defendant caused the transmission of an e-mail regarding the purchase of a Major League Baseball ticket package by means of a wire communication in interstate commerce from Missouri to New York.

2

### 4.   FACTS:

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial.   These facts may be considered as relevant conduct pursuant to Section 1B1.3 of the U.S. Sentencing Guidelines:

Venue for the charge is proper within the Eastern District of Missouri and the defendant expressly waives any claim or challenge to venue as alleged within the charge.

At all times relevant to the charges, the following facts were true.   Company #1 is a company located in St. Louis, Missouri that sells wholesale amounts of food to various commercial customers, typically grocery store chains.   Defendant started working for Company #1 in August 2009.   During 2017-18, defendant held the title of "Senior Director of Sales" at Company #1.   Through that position, defendant developed and managed some of Company #1's largest accounts.   Defendant's compensation for her position included both a regular salary and opportunities for bonus compensation if she met certain sales incentive goals.

Among other privileges and responsibilities, Company #1 provided defendant with a company-funded corporate credit card, and authorized her to use the credit card for official business, including work travel and some client expenses.   Given the nature of defendant's position, she frequently traveled and interacted with customers.   These work responsibilities created the opportunity for defendant to frequently use her corporate card, and made it important for defendant to accurately report to Company #1 what each credit card charge was actually for, given the number of charges, her broad work responsibilities, and the large out-of-state clients that she serviced.

3

During 2017-2018, defendant used her corporate credit card to fund personal expenses, including purchasing luxury ticket packages for a Major League Baseball team that was located in New York. After receiving these baseball tickets, defendant attended some of the games, and also gave some of the tickets to her friends and family. Defendant sold some of the baseball tickets through an Internet service, deposited the proceeds in a bank account, and spent the ticket proceeds on personal expenses.

When these fraudulent credit card charges appeared on her monthly corporate expense reports at Company #1, false and misleading descriptions of the charges were used on her expense reports that concealed the personal nature of the charges from Company #1. Defendant sometimes suggested to Company #1 that certain charges could be billed to food customers and food suppliers who had agreed to reimburse Company #1 for these charges, for example using baseball tickets for a customer's charity auction. But when these food customers and suppliers were later billed for the charges, they advised Company #1 that they had neither authorized the charges nor received any services or goods under these transactions. Sometimes on the same day, defendant provided Company #1 and the Major League Baseball team with radically different explanations of the same credit card transactions. Defendant's repeated misrepresentation of the charges enabled execution of her scheme, and delayed discovery of the scheme by Company #1.

From on or about March 6, 2017 to November 9, 2018, defendant Tara D. Sabatini devised and intended to devise a scheme to defraud Company #1, and to obtain money and property by means of material, false and fraudulent pretenses, representations and promises.

4

It was part of the scheme that defendant used her corporate credit card for personal expenses, and then made false and fraudulent representations to Company #1 regarding her corporate credit card transactions in order to obtain money fraudulently from Company #1.

On or about June 8, 2018 in St. Louis City and St. Charles County, in the Eastern Division of the Eastern District of Missouri, and elsewhere, defendant Tara D. Sabatini, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce, from Missouri to New York, an authorization to use her corporate credit card to purchase for $32,000 a ten game 4 seat "Legends" package of Major League Baseball tickets.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for Count One to which the defendant is pleading guilty is imprisonment of not more than twenty years, a fine of not more than $250,000, or twice the gross pecuniary gain derived by defendant from the offense or twice the gross pecuniary loss suffered by another person because of the offense, whichever sum is greater, or both such imprisonment and fine.   The Court may also impose a period of supervised release of not more than three years.

## 6. U.S. SENTENCING GUIDELINES:   2018 MANUAL:

The defendant understands that these offenses are affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.   The parties recommend that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

5

a. **Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that Counts One has a base offense level of 7 pursuant to U.S.S.G. § 2B1.1(a)(1).

**(2) Specific Offense Characteristics:** The Government argues that Count One involves a loss to Company #1 that was more than $250,000 but less than $550,000, adding 12 points under U.S.S.G. § 2B1.1(b)(1)(G), for a total of 19. The defendant argues that Count One involves a loss of more than $150,000 but less than $250,000 per U.S.S.G. § 2B1.1(b)(1)(F), adding 10 points for a total of 17. Defendant reserves the right to challenge the Government's higher amount of loss calculation, and both parties reserve the right to offer evidence and argument at sentencing regarding the amount of loss.

**b. Chapter 3 Adjustments:** The Government argues that defendant occupied and abused a position of trust in a manner that significantly facilitated the commission and concealment of the offense, adding two points under U.S.S.G. § 3B1.3, for a total of 19 or 21 depending upon the resolution of the loss issue discussed above. Defendant reserves the right to challenge the abuse of trust enhancement, and both parties reserve the right to offer evidence and argument at sentencing regarding this issue.

**(3) Acceptance of Responsibility:** The parties recommend that three levels should be deducted pursuant to Section 3E1.1(a)-(b), for a total of 14, 16, or 18 depending upon the resolution of the sophisticated means and abuse of trust issues discussed above.

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are

inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

 **c. Other Adjustment(s)/Disputed Adjustments:** None.

 **d. Estimated Total Offense Level:** The Parties agree that the Total Offense Level is 14, 16, or 18 depending upon the resolution of the loss and trust issues discussed above.

 **e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

 **f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. Guidelines applications not expressly addressed by the parties' recommendations, but which are addressed by the Presentence Report or the Court, may be presented to the Court for consideration by either party, with argument and/or evidence depending upon the circumstances. The parties agree and understand that the Court, in its discretion, may apply any Guidelines not addressed in this document, and the parties shall not be permitted to withdraw from the plea agreement because of that discretion.

### 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** (1) The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** The parties disagree as to whether the offense involved an abuse of trust and a loss over $250,000, resulting in a possible 4 level increase, and will litigate those issues at sentencing. The parties agree to abide by the district court's determination of the two issues, and specifically waive their rights to appeal the district court's rulings resulting in the calculation of the Total Offense Level. In the event the Court accepts the plea, and after determining the appropriate Total Offense Level, sentences the defendant within or below the corresponding range, then, as a part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, and after determining the appropriate Total Offense Level, sentences the defendant within or above the corresponding range

8

    **b.**   **Habeas Corpus:**   The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c.**   **Right to Records:**   The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    **a.**   **Disclosures Required by the United States Probation Office:**   The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b.**   **Civil or Administrative Actions not Barred; Effect on Other Government Agencies:**   Nothing contained herein limits the rights and authority of the United States to take any civil, tax, or administrative action against the defendant.

    **c.**   **Supervised Release:**   Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of

the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The parties believe that an order of restitution is mandatory in this case. Further, pursuant to 18 U.S.C. § 3663(a)(3), the parties recommend the imposition of restitution order against defendant of $233,857 payable to Company #1. The defendant further agrees that she will ensure that her lawyer has access to $233,857 for restitution purposes and those funds are available in the defense lawyer's possession or direct control for immediate and full payment to the Clerk of Court at sentencing or immediately after sentencing. If the full $233,857 is not in the custody and control of the defense lawyer at the time of sentencing for restitution purposes in this case, then the Government reserves the right to argue for a higher restitution amount at sentencing. Further, Company #1 reserves its rights to seek additional civil remedies and recoveries under state and federal law, while the defendant reserves the right

to contest or challenge any later civil claims.   18 U.S.C. § 3664(j)(2)(A)-(B).

### 9.   ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his/her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.   The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.   The defendant's counsel has explained these rights and the consequences of the waiver of these rights.   The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel.   Defense counsel has

completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

10-1-20
Date

Tara D. Sabafini
Defendant

10/2/2020
Date

Martin Minnigerode
Attorney for Defendant
1922 Chouteau Ave
St. Louis, MO 63103
(314) 266-4686
martin@mmlawstl.com

10-22-2020
Date

Andrew J. Lay
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200
Andrew.Lay@usdoj.gov

13